UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| TIMOTHY G. BROWN and TRACY L. BROWN,<br><br>      Plaintiffs,<br><br>vs.<br><br>CONTINENTAL RESOURCES, INC., an Oklahoma Corporation,<br><br>      Defendant. | 5:18-CV-05048-KES<br><br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

  Plaintiffs, Timothy G. Brown and Tracy L. Brown, filed a complaint in South Dakota Circuit Court seeking damages for injury to their surface and subsurface estate against defendant, Continental Resources, Inc. Docket 1-1. Continental removed this action to United States District Court for the District of South Dakota under 28 U.S.C. § 1332(a). Continental now moves for partial summary judgment on the Browns's surface damage claims. Docket 45. The Browns oppose the motion. Docket 53. The Browns also move for an order finding the Browns's responses to Continental's requests for admissions deemed served on April 3, 2020. Docket 52. For the following reasons, the court grants Continental's motion for partial summary judgment on the Browns's surface damage claims and grants the Browns's motion for an order finding the Browns's responses to Continental's requests for admissions deemed served on April 3, 2020.

## FACTUAL BACKGROUND

  The facts, viewed in the light most favorable to the non-moving party, are as follows:

The Browns own interests in land in Harding County, South Dakota, located in Township 22 North, Range 4 East, Black Hills Meridian. Docket 54 ¶ 1. Within Township 22, the Browns own surface interests in all of sections 29, 30, and 31, and nearly all of section 32. *Id.* ¶ 2. The Browns own mineral interests that were inherited directly from Walton and Kathleen Thune of Ladner, South Dakota, in the western halves of sections 30 and 31. *Id.* ¶ 11. On October 16, 1972, the Thunes entered into two leases with Phillips Petroleum Company, which provide in Section 10:

> In the interest of conservation, the protection of reservoir pressures and recovery of the greatest ultimate yield of oil and/or gas, lessee shall have the right to combine the leased premises with other premises in the same general area for the purpose of operating and maintaining repressuring and recycling facilities, and for such purpose may locate such facilities, including input wells, upon the leased premises, and no royalties shall be payable hereunder upon any gas used for repressuring and recycling operations benefiting the leased premises.

*Id.* ¶ 11; Docket 50-1 ¶ 10; Docket 50-2 ¶ 10. Continental is the successor to Phillips Petroleum Company under these two leases. Docket 54 at ¶ 11.

In 2004, the South Dakota Department of Environment and Natural Resources (DENR) held a public hearing to determine whether to allow the creation of the Central Buffalo Red River Unit (CBRRU). *Id.* ¶ 5. Unitization would allow Continental[1] to treat wells in the same area as the Browns's land in a coordinated way. *Id.* Operations in the Unit would increase oil production by injecting water into certain wells in the Red River geologic formation. *Id.* Water injection would allow Continental to increase the pressure in the formation and push more oil towards producing wells in the Unit. *Id.* The Browns's land relevant to this case is located in the CBRRU. *Id.* ¶ 4. The Browns received notice of the proposed unitization and did not object to unitization. *Id.* ¶¶ 6-7.

---

[1] Prima Exploration, Inc. was the original party petitioning DENR for unitization. *See* Docket 49-2 at 8. Prima transferred operations to Continental in February 2013. Docket 49-1.

2

On October 21, 2004, DENR approved the unitization agreement embracing the Browns's lands. *Id.* ¶ 8; Docket 49-2 at 8. Lands subject to the Unit Agreement are called the "Unit Area," and any oil and gas produced from the Unit Area are called "Unitized Substances." Docket 54 ¶ 8.

Section 11 of the Unit Agreement states that "the primary purpose of this Agreement is to permit the institution and consummation of an enhanced recovery program for the maximum economic production of Unitized Substances[.]" *Id.* ¶ 9; Docket 49-3 ¶ 11. Section 11 gives the Unit Operator "the right to inject into the Unitized Formation any substances for enhanced recovery purposes . . . and the parties hereto, to the extent of their surface rights and interest owned anywhere within the Unit Area, grant to the Unit Operator the right to use as much of the surface of the land within the Unit Area as may be reasonably necessary for the operation of the development of the Unit Area." Docket 54 ¶ 9; Docket 49-3 ¶ 11. The Browns's interests in sections 29, 30, 31, and 32 are governed by the Unit Agreement. Docket 54 ¶ 10; Docket 49-3 at 26, 36, 38, 47.

In 2010, Continental proposed to drill the CBRRU 24-31NH (the 24-31 Well), which is the subject of this lawsuit. Docket 54 ¶ 14. The 24-31 Well was drilled horizontally underneath the Browns's surface in sections 30 and 31. *Id.* Prior to drilling the 24-31 Well, the Browns and Continental executed two agreements: the 2010 Surface Use Drilling Agreement and the 2010 Pipeline Agreement, both dated July 6, 2010. *Id.* ¶ 15; *see also* Dockets 49-4, 49-5.

The 2010 Surface Use Drilling Agreement provides that "Grantee desires to drill and complete the [24-31 Well] located [on the Browns's land]." Docket 49-4 at 1. It allowed Continental to install and maintain an access road upon the Browns's land. *Id.* Under the release section, the agreement states that "Grantors do hereby release,

discharge and acquit Grantee, its agents, successors and assigns from any and all surface damages, included [sic] but not limited to all damages relating to drilling and completing the Well, constructing the initial access road and installing buried power lines." *Id.* ¶ 1. Section two of the agreement provides for

> [f]ull rights and access to use of Grantors' Land as are reasonably necessary for operation of all oil and gas activity for purposes of easements to locate, survey routes, construct, maintain, operate, inspect, alter, repair and remove roads, across and through Grantors' Land and the use of the subsurface for underground electric power liens for use on an appurtenance or equipment.

*Id.* ¶ 2.

The 2010 Pipeline Agreement also states that "Grantee desires to drill and complete the [24-31 Well] located [on the Browns's land]." Docket 49-5 at 1. It allowed Continental "to install and maintain pipelines upon Grantors' land[.]" *Id.* Under the "Damages" section, the agreement provides that "Grantors do hereby release, discharge and acquit Grantee, its agents, successors and assigns from any and all surface damages, included [sic] but not limited to all damages relating to installation of the initial pipelines." *Id.* ¶ 1. The agreement allowed for a right of way and easement

> with [] the right of ingress and egress to and from, and access on and along said right of way, with the right to use existing roads, for the purpose of constructing, inspecting, repairing, installing, removing, replacing and maintaining the pipelines and the replacement of any pipeline with like or different size pipe.

*Id.* ¶ 2.

By 2016, Continental determined that converting the 24-31 Well from an oil production well to a water injection well would better serve the CBRRU's purposes. Docket 54 ¶ 16. Continental would pump water through the 24-31 Well into the Red River formation to repressure the formation so additional oil would flow into other oil producing wells in the CBRRU. *Id.* Continental filed an application with DENR to convert the 24-31 Well in 2016. *Id.* ¶ 18. Continental asserted to DENR that it would

4

inject water from within the CBRRU into the 24-31 Well. *Id.* ¶ 39. DENR gave notice that it intended to approve the conversion to persons affected by the conversion, including the Browns. *Id.* ¶ 18. The Browns did not petition to intervene or protest the proposed conversion. *Id.* ¶ 19. On September 2, 2016, DENR approved the permit to convert the 24-31 Well into a water injection well.[2] *Id.* ¶ 20; Docket 49-6 at 1, 3.

In order to provide the volume of water needed to raise pressure around the 24-31 Well, Continental needed to lay a second water line along the pipeline route and road previously built in 2010 under the two 2010 agreements. Docket 54 ¶ 21. Continental and the Browns entered into a "Payment Agreement for Pipeline Right of Way Grant and Release of Damages" (the 2017 Payment Agreement) on May 9, 2017 after some disagreement over annual payments concerning the new pipeline. *Id.* ¶¶ 21, 43, 44; Docket 49-7. Tim Brown stated that he entered into the 2017 Pipeline Agreement to avoid truck traffic on his land. Docket 54 ¶ 64. The 2017 Payment agreement provided for:

> a. [A] right of way and easement and privilege for the purposes of surveying, laying, constructing, installing, maintaining, operating, repaired [sic], replacing, inspecting, altering, reconstructing, changing the size, removing and/or abandoning in place one pipeline[;]
>
> b. [R]ights to install and maintain all fittings, tie-overs, shut off valves, pipeline markers, cathodic protection equipment, pig launchers and all other equipment and appurtenances thereto, for the transportation of water, saltwater, [and] kindred substances[;] and
>
> c. [A]ll privileges necessary or convenient for the full use of the rights herein granted, together with ingress and egress along said Facilities and over and across said Property[.]

---

[2] On January 5, 2018, Continental requested a modification of its permit to inject water from outside the CBRRU. Docket 54 ¶ 41. DENR approved the request, without public hearing, on January 5, 2018. *Id.* ¶ 42.

Docket 54 ¶ 21; Docket 49-7 at 2. The agreement states that the sum of payment agreed upon by the Browns and Continental "shall constitute full and complete payment for GRANTOR's execution of the [2017 Payment Agreement] and the easement granted thereunder and, except as set forth below, all damages arising out of or relating to the construction and installation of the Facilities under the [2017 Payment Agreement]." Docket 49-7 at 1. The agreement also provided that "[t]he consideration paid herein by GRANTEE includes payment for actual damages to crops, pasture, fences and timber, which arise from surveying, laying, installing and/or constructing said Facilities." *Id.* at 2. Under the 2010 Surface Use Drilling Agreement, the 2010 Pipeline Agreement, and the 2017 Payment Agreement, the Browns have received $117,315.83 from Continental through January 17, 2020. Docket 54 ¶ 25.

Before the new water pipeline was constructed, Continental needed to add substantial volumes of water through the 24-31 Well to repressure the Red River formation. *Id.* ¶ 23. From June 23, 2017, to July 8, 2018, Continental hauled by tanker truck 725,296 barrels of water to the 24-31 Well. *Id.* The Browns dispute the dates that the hauling began and ended. *Id.* The Browns also dispute the amount of water hauled to the 24-31 Well. *Id.* Continental claims that it began transporting water to the 24-31 Well through the newly constructed water pipeline on July 18, 2018, a date that the Browns dispute. *Id.* ¶ 24. The Browns contend that Continental directed its trucks to haul water over the Browns's property seven days-a-week and six to nine loads-a-day. *Id.* ¶ 45. The injection of water into the 24-31 Well substantially increased production of oil from the CBRRU. *Id.* ¶ 26. The Browns hold mineral rights and have received compensation for oil produced from their land. *Id.* Through August 14, 2019, the Browns have received $65,072.08 in royalties from their interest in the CBRRU. *Id.* ¶ 27.

6

On January 2, 2018, the Browns's counsel sent a letter to Continental asking, "under what authority Continental is burdening the Browns['s] surface estate with Continental's [wastewater] disposal operation at [the 24-31 Well]?" Docket 49-9. On January 5, 2018, Continental responded to the Browns's letter, explaining that the 24-31 Well was not for wastewater disposal but for water injection to pressurize the CBRRU "for enhanced oil recovery . . . operations[.]" Docket 54 ¶ 29; Docket 49-10 at 1. Continental's letter indicated that its authority to conduct enhanced oil recovery operations came from the Unit Operating Agreement and DENR's approval of the CBRRU. Docket 54 ¶ 29; Docket 49-10 at 1. The Browns dispute that Continental had authority or permission to travel over their property to haul wastewater to the 24-31 Well. Docket 54 ¶ 29. The Browns also contend that Continental did not respond to the Browns's request to negotiate as required by law. *Id.* ¶ 52. On April 19, 2018, the Browns sent Continental a "Notice of Damages" letter for Continental's use of "[the Browns's] surface estate to haul water for injection into the [24-31 Well]." Docket 49-11. The Browns demanded

> the greater of (a) $2,500.00 per month beginning June 23, 2017, or (b) $0.25 per forty-two (42) gallon barrel for the first 10,000 barrels per month of produced water and thereafter, $0.15 per forty-two (42) barrel for each barrel of produced water disposed of into the [24-31] Well during each month.

*Id.*

On June 20, 2018, the Browns brought suit against Continental seeking damages for injury to the Browns's surface estate and the Browns's subsurface pore space. *See* Docket 1-1; Docket 54 ¶ 53. Continental removed this case to United States District Court for the District of South Dakota on the basis of diversity jurisdiction. *See* Docket 1. On February 6, 2020, Continental served on the Browns a set of Interrogatories, Requests for Production, and Requests for Admission. Docket 48 ¶ 9.

The Browns had until March 10, 2020 to respond to Continental's written discovery. Docket 54 ¶ 33. The Browns responded to Continental's written discovery on April 3, 2020.³ *Id.* ¶ 37; Docket 48-1.

In Interrogatory No. 1, Continental asked the Browns to "[i]dentify and estimate the dollar value of each kind of alleged damage sustained by You . . . as a result of Continental's operation and use of the [24-31] Well[.]" Docket 48-1 at 2. As relevant to this motion, the Browns responded:

> The damage to my land was caused by approximately 12,500 unauthorized truckloads of water (or approximately 1,449,808 barrels of water) that were hauled for injection and disposal into the [24-31] Well.
>
> The dust created by that volume of truck traffic rendered the pasture useless for a period of approximately 20 grazing months. Cattle and sheep would not eat the grass on that pasture area, or ate it minimally, and it was not available for lambing. It is good pasture because of the presence of sagebrush and the protection and shelter to livestock. I rented 900 acres of alternative pasture for those 18 grazing months at a discount from a relative for $35/AUM.
>
> 80 cow/calf pairs x 1 AUM/pair x 18 months = 1,440 AUMs[.]
> $35 per AUM x 1,440 AUMs = $50,400 approximate rent expense.

*Id.* at 2-3.

When asked by Continental to admit that they were compensated for the use of their land under both the 2010 Surface Use Drilling Agreement and the 2010 Pipeline Agreement, the Browns responded: "Admit to the extent that we have received compensation . . . but deny to the extent that we have not received compensation for the use of the pore space beneath the surface, returning fluids to the subsurface formations, metering, injection, pumps, transportation, treating, and injecting or disposal operations." *Id.* at 9.  Similarly, when asked by Continental to admit that

---

³ Although the Browns's responses to Continental's written discovery were overdue, Continental granted the Browns a retroactive extension on the time to respond. Docket 46 at 9 n.6. Thus, the Browns's motion for order finding the Browns's responses to Continental's requests for admission served on April 3, 2020 (Docket 52) is granted.

Continental is released "from any and all surface damages" under the two 2010 agreements, the Browns copied the release portion of both agreements and noted that "Plaintiffs deny that Continental is released from damages arising out of the unauthorized use of pore space beneath the surface, returning fluids to the subsurface formations, metering, injection, pumps, transportation, treating, and injecting or disposal operations." *Id.* at 11-12. The Browns dispute that the royalty payments from the CBRRU and payments for surface use and pipelines account for their alleged surface damages. *Id.* at 12.

Continental now moves for partial summary judgment on the Browns's surface damage claims. Docket 45.

## LEGAL STANDARD

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet its burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party must inform the court of the basis for its motion and also identify the portions of the record that show there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

To avoid summary judgment, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). Summary judgment is precluded if there is a genuine dispute of fact that

could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When considering a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

"It is . . . well-settled that in a suit based on diversity of citizenship jurisdiction the federal courts apply federal law as to matters of procedure but the substantive law of the relevant state." *Hiatt v. Mazda Motor Corp.*, 75 F.3d 1252, 1255 (8th Cir. 1996). Here, South Dakota law governs substantive issues.

## DISCUSSION

The Browns brought suit against Continental under SDCL ch. 45-5A, which is titled "Compensation for Damages from Mining, Oil and Gas Development." The purpose of that chapter is "to provide the maximum amount of constitutionally permissible protection to surface owners from the undesirable effects of mineral development. This chapter is to be interpreted to benefit surface owners, regardless of when the mineral estate was separated from the surface estate." SDCL § 45-5A-2. Under SDCL § 45-5A-4, "[t]he mineral developer shall pay the surface owner a sum of money equal to the amount of damages sustained by the surface owner for loss of agricultural production, lost land value, and lost value of improvements caused by mineral development."

Here, the Browns seek damages from Continental for the "approximately 12,500 unauthorized truckloads of water . . . that were hauled for injection and disposal into the [24-31] Well." Docket 48-1 at 2. The Browns allege that Continental's truck traffic created dust on the Browns's surface estate rendering their "pasture useless for a period of approximately 20 grazing months." *Id.* The Browns also seek damages for

10

Continental's occupation of the pore space beneath their land resulting from "[t]he injection and disposal of saltwater into the [24-31] Well[.]" *Id.* at 3. The Browns estimate their surface damages created by the truck traffic and dust at approximately $50,400. *Id.* They also estimate their subsurface pore space damages at $362,452. *Id.* The Browns timely notified Continental of damages as required under SDCL § 45-5A-7. *See* Docket 49-11. Continental's motion for partial summary judgment is directed towards the Browns's alleged surface damage claims. Docket 45.

Continental argues that the Browns's claims for surface damages were released by the 2010 Surface Use Drilling Agreement and the 2010 Pipeline Agreement. Docket 46 at 10; Docket 56 at 6-8. The Browns contend that the 2010 agreements are limited by their terms and do not release Continental from the alleged damage to the Browns's pasture. Docket 53 at 9-10. The Browns also argue that a material issue of fact remains as to the parties' intent upon entering the 2010 Agreements, prohibiting the entry of summary judgment. *Id.* at 19-22.

In South Dakota, "[c]ontract interpretation is a question of law[.]" *LaMore Rest. Grp., LLC v. Akers*, 748 N.W.2d 756, 761 (S.D. 2008) (quoting *Vander Heide v. Boke Ranch, Inc.*, 736 N.W.2d 824, 831-32 (S.D. 2007)). Releases are considered to be contracts under South Dakota law. *Mueller Pallets, LLC v. Vermeer Corp.*, 09-CV-4016-LLP, 2009 WL 3764004, at *2 (D.S.D. Nov. 10, 2009); *Fenske Media Corp. v. Banta Corp.*, 676 N.W.2d 390, 393 (S.D. 2004). "When the meaning of contractual language is plain and unambiguous, construction is not necessary." *Roseth v. Roseth*, 829 N.W.2d 136, 142 (S.D. 2013) (quoting *Pesicka v. Pesicka,* 618 N.W.2d 725, 726 (S.D. 2000)). "A contract is not rendered ambiguous simply because the parties do not agree on its proper construction or their intent upon executing the contract." *Id.* (quoting *Vander Heide,* 736 N.W.2d at 836). A contract is ambiguous "when it is capable of

11

more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement. *Id.* (quoting *Pesicka*, 618 N.W.2d at 727). "It is well settled that in interpreting a contract, [the court] rel[ies] on the language of the contract to ascertain the intent of the parties." *Fenske*, 676 N.W.2d at 393 (quoting *Carstensen Contracting, Inc. v. Mid-Dakota Rural Water Sys., Inc.*, 653 N.W.2d 875, 877 (S.D. 2002)).

Here, the release portion of the 2010 Surface Use Drilling Agreement states: "Grantors do hereby release, discharge, and acquit Grantee, its agents, successors and assigns from *any and all surface damages, includ[ing] but not limited to* all damages relating to drilling and completing the Well, constructing the initial access road and installing buried power lines." Docket 49-4 ¶ 1 (emphasis added). In the context of this agreement, the Browns are the Grantors and Continental is the Grantee.[4] *See* Docket 47 ¶ 15; Docket 54 ¶ 15. The Browns argue that the 2010 Surface Use Drilling agreement released Continental from damages related only to drilling and completing the 24-31 Well but did not release Continental for the surface damages that form the basis of this claim. Docket 53 at 9, 22. They emphasize the portion of the release that reads "all damages relating to drilling and completing the Well, constructing the initial access road and installing buried power lines." *Id.* at 9-10.

Under the plain language of the release paragraph, Continental is released from "any and all surface damages." Docket 49-4 ¶ 1. "Any and all surface damages" means what it says, and it includes the alleged surface damages caused by Continental's trucks crossing the Browns's surface estate. While the release does note the specific damages relating to drilling and completing the Well that the Browns stress, it uses

---

[4] Continental received an assignment from Prima Exploration, Inc.—the original grantee in the 2010 Surface Use Drilling Agreement.

12

the phrase "including but not limited to all damages relating to drilling and completing the Well[.]" *Id.* The term "including but not limited to" means that the list is only illustrative in nature, it does not mean that a list is complete. *Dan's Super Mkt., Inc. v. Wal-Mart Stores, Inc.*, 38 F.3d 1003, 1006 n.2 (8th Cir. 1994) (applying North Dakota law). Further, the agreement granted Continental "[f]ull rights and access to use of Grantors' Land as are reasonably necessary for operation of all oil and gas activity for purposes of easements to locate, survey routes, construct, maintain, *operate*, inspect, alter, repair and remove roads, across and through Grantors' Land[.]" Docket 49-4 ¶ 2 (emphasis added). Continental used the roads on the Browns's surface estate for the purpose of operating oil and gas activity—specifically enhanced oil recovery operations—as authorized by the 2010 Surface Use Drilling Agreement. Thus, the court finds that the 2010 Surface Use Drilling Agreement is unambiguous, and that the Browns released Continental from "any and all surface damage[]" claims, including the Browns's claims of surface damage caused by Continental's truck traffic.

      Like the 2010 Surface Use Drilling Agreement, the 2010 Pipeline Agreement's release section states: "Grantors do hereby release, discharge and acquit Grantee, its agents, successors and assigns from *any and all surface damages, includ[ing] but not limited to* all damages relating to installation of the initial pipelines." Docket 49-5 ¶ 1. The Browns again contend that this release is limited only to damages related to the installation of the initial pipeline. Docket 53 at 22. But like the 2010 Surface Use Drilling Agreement, the 2010 Pipeline Agreement plainly states that it releases Continental from "any and all surfaces damages." Docket 49-5 ¶ 1. It also contains the same "includ[ing] but not limited to" language when it describes the particular type of damages. *Id.* Thus, for the same reasons as the 2010 Surface Use Drilling Agreement, the court finds that the 2010 Pipeline Agreement is unambiguous, and that the

13

Browns released Continental from "any and all surface damage[]" claims, including the Browns's claims of surface damage caused by Continental's truck traffic.

## CONCLUSION

There are no genuine issues of material fact regarding the Browns's surface damages claim. Thus, it is

ORDERED that Continental's motion for partial summary judgment (Docket 45) is granted.

IT IS FURTHER ORDERED that the Browns's motion for an order finding the Browns's responses to Continental's requests for admission served on April 3, 2020 (Docket 52) is granted.

Dated March 30, 2021.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE